IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

BRIAN BRITT                                                    PLAINTIFF

v.                                          CAUSE NO. 1:11-cv-00074-HSO-JMR

JACKSON COUNTY, MISSISSIPPI
*by and through the Jackson County
Board of Supervisors*,
LUTHER B. GOFF, JR. *in his official
capacity*, and
GRETA HEARNDON, *in her
official capacity*                                            DEFENDANTS


**MEMORANDUM OPINION AND ORDER GRANTING
DEFENDANTS' MOTION TO STRIKE AND GRANTING
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

THIS MATTER IS BEFORE THE COURT on the Motion for Summary

Judgment [8] and Motion to Strike [22] of Defendants Jackson County, Mississippi,

by and through the Jackson County Board of Supervisors, Luther B. Goff, in his

official capacity as Tax Assessor of Jackson County, and Greta Hearndon, in her

official capacity as an employee of the Jackson County Tax Assessor's Office.  After

careful consideration of the submissions and the relevant law, it is the Court's opinion

that both Motions should be granted.

## I. BACKGROUND

A.    Procedural History

On October 8, 2010, Plaintiff Brian Britt, proceeding *pro se,* filed suit in State

court, alleging that Defendants denied him the right to file for homestead exemption

in 2009.  Plaintiff alleges that Defendants "violated numerous State and Federal

statutes including sections 1983 and 1985 among others, violated State and Federal Constitutions, and committed multiple Torts including but not limited to intentional infliction of emotional distress, negligence and misrepresentation." Pl.'s Compl. [1-2] at p. 3. Plaintiff claims that Defendants violated his right to equal protection and the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* (ADA). *Id.* at p. 2. He requests actual damages, punitive damages, and attorneys' fees. *Id.* at p. 3.

Before filing suit, Plaintiff apparently served Defendants with a Notice of Claim as required by the Mississippi Tort Claims Act, MISS. CODE ANN. § 11-46-11. Notice of Claim, Ex. to Pl.'s Comp. [1-2]. The Jackson County Board of Supervisors voted to deny the claim. Def.'s Mem. Br. in Support of Mot. Summ. J. at p. 1. Plaintiff then filed suit in the Circuit Court of Jackson County, Mississippi, on October 8, 2010. Pl.'s Compl. [1-2]. Defendants removed the action to this Court on February 28, 2011. Def.'s Notice of Removal [1].

B.     Factual Allegations

This dispute arises out of Plaintiff's contention that on two separate dates, March 31, 2009, and April 1, 2009, he was denied the right to file for homestead exemption. Pl.'s Compl. [1-2] at p. 1. Mississippi law requires that a person apply for homestead exemption on or before the first day of April. MISS. CODE. ANN. § 27-33-31.

According to Plaintiff, he first attempted to apply for homestead exemption at the West Jackson County Tax Assessor's Office in Ocean Springs, Mississippi, on March 31, 2009, the day before the deadline to apply. He asserts that he "was unable to apply because there was a tremendously long line of applicants waiting in line . . .

."  Pl.'s Compl. [1-2] at p. 1.  Plaintiff claims that he "stood and waited as long as he was physically able but due to disabilities ultimately had to leave when it seemed there was no hope of being allowed to apply . . . ."  *Id.* at p. 2.  Plaintiff's Complaint [1-2] does not identify the disabilities to which he is referring.  In his Notice of Claim attached to the Complaint [1-2], he references having rheumatoid arthritis.  Notice of Claim, Ex. to Pl.'s Compl. [1-2] at p. 6.  In his Response [15] to Defendants' Motion for Summary Judgment, Plaintiff states that rheumatoid arthritis, atypical polio, multiple chemical sensitivity, and Attention Deficit Disorder (ADD) "prevented [him] from standing in line more than 20 minutes on March 31, 2009."  Pl.'s Resp. [15] at p. 29.  Plaintiff alleges that because of the waiting line and due to his health and disabilities, he was "constructively prevented from applying for homestead exemption on March 31, 2009 . . . ."  Notice of Claim, Ex. to Pl.'s Compl. [1-2] at 7.  The Court observes that Plaintiff has provided no evidence substantiating that he suffered from any of these ailments, or that he, in fact, attempted to apply for homestead exemption on March 31, 2009.  Plaintiff's allegations regarding what occurred on March 31, 2009, are nothing more than conclusory assertions.

Plaintiff also claims that on April 1, 2009, an employee of the West Jackson County Tax Assessor's Office, Defendant Greta Hearndon, refused to let him apply and refused to supply him with an application form.  Pl.'s Compl. [1-2] at p. 2.  Plaintiff arrived at the Tax Assessor's Office on April 1, sometime in the afternoon, and reached the counter to apply at about 4:00 p.m., one hour before the office closed.  *Id.*  Plaintiff recorded his conversation with Defendant Hearndon, apparently without

her knowledge, and Defendants have produced the audio recording in support of their Motion for Summary Judgment [8]. *See* Audio Recording, Ex. "1" to Def.'s Mot. [8] for Summ. J. Plaintiff states that he recorded his conversation with Defendant Hearndon because of an argument that he had with her on the telephone in 2008 regarding the denial of his homestead exemption application, and because he has been "humiliated and belittled by Jackson County way too many times before . . . ." Notice of Claim, Ex. to Pl.'s Compl. [1-2] at p. 7; *see* Pl.'s Resp. [15] at p. 13.

On the audio recording, Plaintiff tells Defendant Hearndon that he was denied a homestead exemption in 2008 because "we lived on the property where it had been operated as a bed and breakfast." Audio Recording, Ex. "1" to Defs.' Mot. [8] for Summ. J. He states that a person named Greta Hearndon called him in 2008 and "told [him] that he was not allowed to file homestead." *Id.* Defendant Hearndon identifies herself as the person who called him in 2008. *Id.* On the recording, Plaintiff tells Defendant Hearndon that he has read the Mississippi statutes on homestead exemption and that he disagrees with the 2008 decision. *Id.* Defendant Hearndon responds by stating that she called the State regarding Plaintiff's 2008 application, and the decision to deny him homestead exemption was one made by the State. *Id.* She relates that if more than 1/5 of the property is used for business, then the property does not qualify for homestead exemption. *Id.* She then tells Plaintiff that if he wants to "take it up" with the Tax Assessor, Defendant Benny Goff, then he can go to his office in Pascagoula, but "today is the deadline." *Id.*

Plaintiff states that he would like to apply. *Id.* Hearndon next tells Plaintiff:

"[y]ou can apply, but it's going to be denied." *Id.* She states that she will take his application, nonetheless. *Id.*("Now, I'll do it, . . , you know, whatever. I don't really care. I don't care personally, but I have to follow the guidelines. So, that's, and I'll take your application but when it gets to the State, they're not gonna allow it."). Plaintiff tells Defendant Hearndon that he would like to apply and that he will argue with the State later. *Id.* Defendant Hearndon then requests a recorded copy of Plaintiff's warranty deed. *Id.* The deed which Plaintiff supplies is a copy of his recorded deed, but the recording date of the deed is cut off. *Id.* Hearndon tells Plaintiff that she has to have the recording date, which is located on a "little sticker." *Id.* She advises him to go to the Office of Land Records to get a copy of his deed containing the recording date, and to then proceed to the homestead office closest to the Office of Land Records, the East Jackson County Tax Assessor's Office. *Id.* She tells Plaintiff that he only has until 5:00 p.m. to do so. *Id.* The Office of Land Records and East Jackson County Tax Assessor's Office are approximately twenty-five miles away from the West Jackson County Tax Assessor's Office. Defendant Hearndon asks Plaintiff if he is going to go to Land Records, and Plaintiff responds, "[i]f I can make it there, I will." *Id.* Defendant Hearndon then states, "[i]t's not my problem you waited 'til the last day." *Id.*

Plaintiff did not go to the Office of Land Records or to the East Jackson County Tax Assessor's Office. Pl.'s Resp. [15] at p. 13. He claims that he did not have sufficient time to do so before the office closed at 5:00 p.m. because he had to stop for gas and because he was "already defeated and deflated." *Id.* Defendants now move

for summary judgment on all of Plaintiff's claims. They further move to strike documents and affidavits Plaintiff submitted after the discovery deadline and after Defendants' Motion [8] for Summary Judgment was fully briefed.

## II. DISCUSSION

A.    Motion to Strike

Plaintiff submitted no initial disclosure to Defendants as required by FED. R. CIV. P. 26(a)(1), and he has not responded to Defendants' Interrogatories and Requests for Production as required by FED. R. CIV. P. 33(b) and 34(b)(2). Plaintiff did respond to Defendants' Motion for Summary Judgment [8], but provided no evidentiary materials in support of his Response [15]. His Complaint [1-2] and Response [15] are not verified in conformity with 28 U.S.C. § 1746, and they do not constitute competent summary judgment evidence. *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994).

In their Reply [18] in support of summary judgment, Defendants point out that Plaintiff's Complaint and Response are unverified. Def.'s Reply [18] at p. 2. On May 17, 2012, twenty-eight days after Defendants' Motion for Summary Judgment [8] was fully briefed, Plaintiff filed a document entitled "Plaintiff's Notice of Supplemental Discovery Disclosures" [20], and a document entitled "Plaintiff's Exhibits to Response to Motion for Summary Judgment" [21]. Plaintiff states in the latter that his failure to attach exhibits to his Response was inadvertent, and that he intended to notarize his Response [15], "but no Notary was available at the time of filing of same." Pl.'s Doc. [21] at p. 1. Attached to Document [21] are three affidavits. *See* Exs. to Pl.'s

Doc. [21]. One is executed by Plaintiff and states that he swears to the truthfulness of the matters contained in his Complaint [1-2] and Response [15]. *Id.* at p. 1.

On May 22, 2012, Defendants filed a Motion to Strike [22] Documents [20] and [21] filed by Plaintiff, as well as the three affidavits attached to Document [20]. Defendants argue that the affidavits were submitted three and a half months after the discovery deadline, they were not filed with Plaintiff's Response as required by Fed. R. Civ. P. 6(c)(2), and they were filed only after Defendants pointed out that Plaintiff's Complaint [1-2] and Response [15] were unverified. They maintain that Plaintiff has produced no competent summary judgment evidence. Def.'s Mot. to Strike [22] at pp. 1-5.

The Court finds that Defendants' Motion to Strike [22] is well-taken and should be granted. Plaintiff filed no motion requesting an extension of the discovery deadline or leave to file a surrebuttal. He has offered no explanation rising to the level of excusable neglect for failing, throughout this case, to abide by the discovery requirements of this Court.[1] It would prejudice Defendants to allow Plaintiff to rely on discovery produced at this late date. Accordingly, Plaintiff will not be given the

---

[1]Presumably before Defendants removed this case, Plaintiff apparently provided Defendants with the audio recording. Defs.' Mem. Brief in Support of Mot. [8] for Summ. J. at p. 3. Plaintiff also attached several documents, including his Notice of Claim, to his Complaint. *See* Ex. to Pl.'s Compl. [1-2]. Plaintiff states in his Response [15] that he did not provide discovery to Defendants because he did not know of any relevant additional documents that he had not already provided, his printer was broken, his computer was broken, he was in the process of moving, he had surgery (he does not disclose the type of surgery), and he has ADD. Pl.'s Resp. [15] at pp. 8-10. The Court will not excuse Plaintiff's discovery violations based on these belated conclusory and self-serving statements.

benefit of producing discovery or verifying his Complaint [1-2] and Response [15] when he has ignored the Court's discovery requirements up until this time. Defendants' Motion to Strike [22] will be granted. However, the Court notes that, even if it were to consider the items submitted by Plaintiff in opposition to Defendants' Motion for Summary Judgment [8], this would not alter the Court's resolution of the matter, and summary judgment would nevertheless remain appropriate.

In his Response [15], Plaintiff also moves the Court to allow him to amend his pleadings to add Defendant Luther B. Goff and Defendant Greta Hearndon as defendants in their individual capacities. Pl.'s Resp. [15] at p. 6. A party may not amend his pleadings in order to avoid summary judgment. *Parish v. Frazier,* 195 F.3d 761, 763 (5th Cir. 1999); *Little v. Liquid Air Corp.,* 952 F.2d 841, 846-47 (5th Cir. 1992). The deadline to amend the pleadings and join parties expired over a year ago. Defendants have proceeded in this case in accordance with the claims as stated in Plaintiff's Complaint [1-2], and the Court will not allow Plaintiff to add additional claims now. Plaintiff's request is not well taken and will be denied.

B.    Motion for Summary Judgment

1.    **Summary Judgment Standard**

Federal Rule of Civil Procedure 56© states that the judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that a moving party is entitled to judgment as a

matter of law.  Fed. R. Civ. P. 56©.  The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Meyers v. M/V Eugenio C*, 842 F.2d 815, 816 (5th Cir. 1988).

The mere existence of a disputed factual issue does not foreclose summary judgment.  The dispute must be genuine, and the facts must be material.  *Booth v. Wal-Mart Stores, Inc.*, 75 F. Supp. 2d 541, 543 (S.D. Miss. 1999).  With regard to "materiality," only those disputes or facts that might affect the outcome of the lawsuit under the governing substantive law will preclude summary judgment.  *Id.* at 543 (citing *Phillips Oil Co. v. OKC Corp.,* 812 F.2d 265, 272 (5th Cir. 1987)). Where "the summary judgment evidence establishes that one of the essential elements of the plaintiff's cause of action does not exist as a matter of law, . . . . all other contested issues of fact are rendered immaterial."  *Id.* (quoting *Topalian v. Ehrman*, 954 F.2d 1125, 1138 (5th Cir. 1987)).

To rebut a properly supported motion for summary judgment, a non-movant must "go beyond the pleadings" and "designate specific facts showing that there is a genuine issue for trial."  *Celotex,* 477 U.S. at 324.  The non-movant must present significant probative evidence, since there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  *Booth*, 75 F. Supp. 2d at 543.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The non-movant may not rely on mere denials of material facts, nor on unsworn allegations in the pleadings or arguments and assertions in briefs or legal memoranda. *Booth,* 75 F. Supp. 2d at 543. Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments have never constituted an adequate substitute for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.,* 276 F.3d 754, 759 (5th Cir. 2002). Federal Rule of Civil Procedure 56(c)(3) states that a party asserting that a fact "is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . , admissions, interrogatory answers, or other materials."

2.    **ADA Claim**

Plaintiff's ADA claim is based upon his allegation that he was prevented from applying for homestead exemption on March 31, 2009, because the line at the Tax Assessor's Office was too long, and his disabilities prevented him from standing in line longer than twenty minutes. Pl.'s Compl. [1-2] at p.1; Pl.'s Resp. [15] at 29. He also asserts that Defendant Hearndon violated the ADA on April 1, 2009, by advising him to drive to the Office of Land Records, twenty-five miles away, "in heavy traffic with severe time constraints," to obtain a copy of his deed with the recording date, and to then file for homestead exemption before 5:00 p.m. at the Tax Assessor's Office closest to the Office of Land Records. Notice of Claim, Ex. to Pl.'s Comp. at p.7. Plaintiff contends that Defendant Hearndon's "mandate" was a "blatant intentional violation of the [ADA] by unlawfully creating a mandated 'wild goose chase' of

practically impossible obstacles and circumstances for Plaintiff to overcome and costs for Plaintiff to pay before ever being allowed the equal opportunity and equal access to apply for Homestead Exemption like everyone else." *Id.*

Title II of the ADA prohibits the providers of public services from discriminating against disabled individuals. 42 U.S.C. § 12132, *et. seq.* To establish a prima facie case of discrimination under the ADA, a plaintiff must demonstrate three elements: (1) that the plaintiff is a "qualified individual with a disability" as defined by the ADA; (2) that the plaintiff has been denied the benefits of services, programs, or activities of a public entity, or has been subjected to discrimination by a public entity; and (3) that such exclusion, denial of benefits, or discrimination was by reason of his disability. *Lightbourn v. Cnty. of El Paso,* 118 F.3d 421, 428 (5th Cir. 1997).

A "qualified individual with a disability" means

> an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.

42 U.S.C. § 12131(2). A "disability" is defined as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or © being regarded as having such an impairment." 42 U.S.C. § 12102(1).

As a threshold requirement, a plaintiff must establish that he has a disability. *Griffin v. United Parcel Serv.,* 661 F.3d 216, 222 (5th Cir. 2011). The ADA requires

an individualized, case-by-case determination of the nature of an impairment. *Id.* "Neither the Supreme Court nor [the Fifth Circuit] has recognized the concept of a *per se* disability under the ADA, no matter how serious the impairment; the plaintiff must still adduce evidence of an impairment that has actually and substantially limited the major life activity on which he relies." *Id.* at 223. "Individuals claiming disability status under the ADA may not rely merely on evidence of a medical diagnosis of an impairment but must present evidence that the extent of the limitation caused by their impairment in terms of their own experience is substantial." *Toyota Motor Mfg., Ky., Inc. v. Williams,* 534 U.S. 184, 198 (2002), *superseded by statute on other grounds,* ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 3553 (2008).

Plaintiff has produced no competent medical evidence whatsoever that he has been diagnosed with any of the medical impairments from which he contends he suffers, nor has he presented evidence that these impairments substantially limit a major life activity. Plaintiff has failed to create a genuine issue of material fact that he is disabled, and consequently, his ADA claim fails.

Even if Plaintiff had produced sufficient evidence that he was disabled within the meaning of the ADA, his claim would not survive summary judgment. He has offered no summary judgment evidence showing that he was not allowed to apply for homestead exemption on April 1, 2009, because of a disability, as opposed to based upon his failure to provide the information required by the homestead exemption application. Further, Plaintiff does not explain or support his theory that being

required to stand in a long line at the Tax Assessor's Office on March 31, 2009, the day before the deadline, somehow constitutes a violation of the ADA. He makes no claim that his limitations are obvious, or that he made Defendants "aware of the inadequacy of the accommodations provided." *Greer v. Richardson Ind. School Dist.,* Slip Copy, 2012 WL 833367, *7 (5th Cir. 2012). "[T]here is a common sense aspect to determining whether a public entity has provided accommodations for a disabled individual, part of which requires that the public entity be made aware of the inadequacy of the accommodations provided." *Id.* Summary judgment is appropriate on Plaintiff's ADA claim.

### 3.    42 U.S.C. § 1983 Claim

Plaintiff references 42 U.S.C. § 1983 in his Complaint, but does not connect this statute to a specific claim. Section 1983 does not create substantive rights. *Gonzaga Univ. v. Doe,* 536 U.S. 273, 284 (2002). Rather, it provides a mechanism to enforce rights secured by federal law. *Id.* "To state a claim under 42 U.S.C. § 1983, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Doe ex rel. Magee v. Covington Co. School Dist.,* 675 F.3d 849, 854-55 (5th Cir. 2012). Because the Court is required to liberally construe a *pro se* plaintiff's complaint, the Court reads Plaintiff's section 1983 claim to be the vehicle for his equal protection claim.

Plaintiff alleges that Defendants violated his right to equal protection because Defendant Hearndon "refused to let [him] apply for Homestead Exemption

-13-

like everyone else." Notice of Claim, Ex. to Pl.'s Compl. [1-2] at p. 7. He further

claims that Defendants violated his right to equal protection because:

> homeowners who apply [for homestead exemption] in January or February get preferential treatment than [sic] those applying on March 31 and April 1. . . . Those who file on the last two days are not entitle [sic] to the same rights, nor to Equal Protection, nor to any right to apply at all if Herdon [sic] so chooses. . . . Defendants' Motion clearly conveys the message that Jackson County's policy is to *discourage* homeowners to apply on the last few days and to *encourage* homeowners to file in January or February. . . . I was being taught a lesson by Hearndon because that is the way Jackson County punishes those who wait until the last day . . . ."

Pl.'s Resp. [15] at p. 11.

A section 1983 claim against a defendant in his or her official capacity is

treated as a claim against the governmental entity, in this case Jackson County.

*Monell v. New York City Dept. of Soc. Serv.,* 436 U.S. 658, 690-91 (1978). "[A]

municipality cannot be held liable under § 1983 on a *respondeat superior* theory."

*Id.* at 691. To prove Defendants are liable under section 1983, Plaintiff must prove

(1) the existence of a policymaker, and (2) an official policy or custom, (3) which is

the moving force behind a constitutional violation. *Piotrowski v. City of Houston,*

237 F.3d 567, 578 (5th Cir. 2001). He must also prove that the municipality was

"deliberately indifferent" to the known consequences of the official policy or custom.

*Id.* at 580. The requirement of an official policy or custom distinguishes acts of the

municipality from acts of employees in order to limit municipal liability to conduct

for which the municipality is actually responsible. *Pembaur v. City of Cincinnati,*

475 U.S. 469, 479 (1986). "Official policy is ordinarily contained in duly promulgated policy statements, ordinances, or regulations." *Piotrowski,* 237 F.3d at 579. A custom is a "persistent, widespread practice of [government] officials or employees, which, although not officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents municipal policy." *Id.*

"The equal protection clause essentially requires that all persons similarly situated be treated alike." *Mahone v. Addicks Util. Dist. of Harris Cnty.,* 836 F.2d 921, 932 (5th Cir. 1988). A plaintiff may bring an equal protection claim as a member of a group or as a "class of one." *Lindquist v. City of Pasadena,* 669 F.3d 225, 233 (5th Cir. 2012). To establish an equal protection violation, a plaintiff must prove intentional discrimination. *Nat'l Ass'n of Gov't Emps. v. City Pub. Serv. Bd. of San Antonio, Tex.,* 40 F.3d 698, 714-15 (5th Cir. 1994). If an equal protection claim does not involve a suspect class or a fundamental right, courts review state action using a rational basis test. *Delahoussaye v. City of Iberia,* 937 F.2d 144, 149 (5th Cir. 1991). Differential treatment survives rational basis scrutiny if the classification is rationally related to achieving a legitimate government interest. *Id.* The actual reason for a state action is irrelevant for claims reviewed under rational basis scrutiny and will be upheld if "any state of facts reasonably may be conceived to justify [its discrimination]." *McGowan v. Maryland,* 366 U.S. 420, 426 (1961)). The burden is on the plaintiff to negate "every conceivable basis which

might support [the classification]." *Heller v. Doe,* 509 U.S. 312, 320 (1993)(internal citation omitted).

Plaintiff has failed to create a genuine issue of material fact with respect to his equal protection claim. He has not alleged that Defendants infringed on a fundamental right, because there is no fundamental right to apply for or receive homestead exemption. He has not shown that he has been treated differently based upon a protected classification. Most significantly, he has not provided evidence that others who did not supply the recording date of their deeds were allowed to apply for homestead exemption, while he was not. Defendants have offered a rational explanation for the requirement that persons seeking homestead exemption provide the recording dates of their deeds. A recording date is required by the application, and Mississippi law requires that a person seeking homestead exemption provide all information required by the application. MISS. CODE ANN. § 27-33-31. Nor does Plaintiff identify a policy or custom which underlies his section 1983 claim. For this reason alone, his claim fails. Assuming that the requirement that persons supply the recording date of their deeds can be viewed as a policy of the County, as opposed to the State, the claim nevertheless fails because Plaintiff cannot show that his constitutional rights were violated by the policy. Summary judgment is therefore appropriate on Plaintiff's 42 U.S.C. § 1983 claim.

### 4.     42 U.S.C. § 1985 Claim

Plaintiff also purports to bring a claim pursuant to 42 U.S.C. § 1985. Section 1985 provides a cause of action for several types of conspiracies. Plaintiff does not

identify the subsection of section 1985 on which he bases his claim. The Court construes Plaintiff's Complaint [1-2] liberally to assert a claim under section 1985(3), which prohibits conspiracies "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws . . . ." 42 U.S.C. § 1985(3). In this context, Plaintiff must show that the conspiracy was motivated by a class-based animus. *Hilliard v. Ferguson,* 30 F.3d 649, 653 (5th Cir. 1994).

Plaintiff's section 1985 claim is based upon his allegation that "Jackson County officials are very familiar with [him] . . . ." Pl.'s Resp. [15] at p. 15. He alleges that it is "no coincidence" that he was refused a homestead exemption application because "Jackson County officials have tried to give [him] a hard time and have tried to make [his] life miserable on many past occasions" because of his words and actions to "publicly expose the truth." *Id.* at pp. 15-16. He contends that Jackson County has violated section 1985 because its officials asked him to leave a polling facility in 2008 because he was wearing a "Three Stooges" T-shirt, and because he has had disputes with Jackson County over not receiving his mail. *Id.* at p. 16. He maintains that section 1985 applies because Jackson County officials and Defendant Hearndon punished him and "punish[] those who wait until the last day to apply for homestead exemption]" in order to "teach them a lesson" to file earlier the next year. *Id.* at p. 12.

Like section 1983, section 1985(3) is not itself a source of substantive rights. *Great Am. Fed. Sav. & Loan Assn. v. Novotny,* 442 U.S. 366, 372 (1979). Rather, "[i]t is a purely remedial statute, providing a civil cause of action when some otherwise

defined federal right – to equal protection of the laws or equal privileges and immunities under the laws – is breached by a conspiracy in the manner defined by the section." *Id.* at 375. If the underlying claim fails, then the section 1985 claim also fails. *Michigan Prot. and Advocacy Serv., Inc. v. Babin,* 18 F.3d 337, 348 (6th Cir. 1994).

Plaintiff does not identify the federal right underlying his section 1985 claim. The Court liberally construes this claim to assert an underlying violation of equal protection pursuant to the Fourteenth Amendment. Having already concluded that Plaintiff's federal equal protection claim pursuant to section 1983 fails, Plaintiff's equal protection claim pursuant to section 1985 fails for the same reasons. Furthermore, Jackson County and its officials, agents, and employees constitute a single legal entity, which cannot conspire with itself. *Hilliard,* 30 F.3d at 653 (applying intracorporate conspiracy doctrine to bar section 1985 claim against public school board and its officials); *Chambliss v. Foote,* 562 F.2d 1015 (5th Cir. 1977), *aff'g,* 421 F. Supp. 12, 15 (E.D.La. 1976)(applying intracorporate conspiracy doctrine to bar section 1985 claim against public university and its officials); *see Dickerson v. Alachua Cnty. Comm'n,* 200 F.3d 761, 768 (11th Cir. 2000)(rejecting employee's section 1985(3) claim where employee alleged civil conspiracy among solely county employees); *Wright v. Illinois Dept. of Children & Family Servs.,* 40 F.3d 1492, 1508 (7th Cir. 1994)(holding that intracorporate conspiracy doctrine applies to government entities); *Runs After v. United States,* 766 F.2d 347, 354 (8th Cir. 1985)(same). Summary judgment is appropriate on Plaintiff's 42 U.S.C. § 1985

claim.

**5.      State Law Tort Claims**

Plaintiff seeks recovery under State law for negligence, intentional infliction of emotional distress, and misrepresentation.  Defendants contend that they are immune from Plaintiff's State law tort claims pursuant to the Mississippi Tort Claims Act, MISS. CODE ANN. § 11-46-9(1)(b), (h), and (I) (MTCA).  The MTCA provides the exclusive civil remedy against a governmental entity or its employee for acts or omissions which give rise to a claim or suit.  MISS. CODE ANN. § 11-46-7(1).  If a court determines that any one of the MTCA immunities applies, a tort claim for money damages cannot be maintained.  *Pearl River Valley Water Supply v. Bridges,* 878 So. 2d 1013, 1016 (Miss. Ct. App. 2004).  Defendants rely upon the following subsections of the MTCA:

> (1)      A government entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim:
> . . .
>
> (b)      Arising out of any act or omission of an employee of a governmental entity exercising ordinary care in reliance upon, or in the execution or performance of, or in the failure to execute or perform, a statute, ordinance or regulation, whether or not the statute, ordinance or regulation be valid;
> . . .
>
> (h)      Arising out of the issuance, denial, suspension or revocation of, or the failure or refusal to issue, deny, suspend or revoke any privilege, ticket, pass, permit, license, certificate, approval, order or similar authorization where

the governmental entity or its employee is authorized by law to determine whether or not such authorization should be issued, denied, suspended or revoked unless such issuance, denial, suspension or revocation, or failure or refusal thereof, is of a malicious or arbitrary and capricious nature;

. . .

(I)    Arising out of the assessment or collection of any tax or fee . . . .

MISS. CODE ANN. § 11-46-9.

A governmental entity and its employees can have no liability for any act or omission in enforcing a statute, ordinance, or regulation, or conversely, for failing to do so. MISS. CODE ANN. § 11-46-9(1)(b). This immunity is subject to a showing by the governmental entity that it exercised "ordinary care." *Harris ex rel. Harris v. McCray,* 867 So. 2d 188, 189 (Miss. 2003).

It is the duty of every person desiring homestead exemption to "furnish all the information required by the application . . . ." MISS. CODE ANN. § 27-33-31. It is the tax assessor's duty to "require each applicant to properly execute the application in entire conformity with Section 27-33-31." MISS. CODE ANN. § 27-33-33(1)(d). Jackson County's homestead application requires the applicant to furnish the recording date of a warranty deed. Ex. "2" to Defs.' Mot. [8] for Summ. J. This is so because Mississippi law requires that an applicant's deed be recorded on or before January 7 of the year for which homestead exemption is sought. MISS. CODE ANN. § 27-33-17(f).

In support of their Motion, Defendants have submitted the audio recording of

what occurred on April 1, 2009, and have produced the homestead exemption application Jackson County utilized in 2009. Exs. "1" and "2" to Defs.' Mot. [8] for Summ. J. The homestead exemption application is supplied by the Mississippi Department of Revenue. *Aff. of Ann W. Beeker, Chief Deputy Tax Assessor,* Ex. "3" to Defs.' Resp. There is no dispute as to what occurred between Plaintiff and Defendant Hearndon on April 1, 2009, because the exchange has been memorialized in the audio recording. After reviewing this summary judgment evidence in conjunction with Mississippi's law on homestead exemption, it is beyond dispute that Defendant Hearndon complied with Mississippi law when she required Plaintiff to supply the recording date of his deed in order to apply for homestead exemption. Defendant Hearndon, as an employee of the Tax Assessor, had a statutory duty to require Plaintiff to properly execute the application. Defendants are therefore immune from Plaintiff's state law claims pursuant to Mississippi Code Annotated Section 11-46-9(1)(b).

Plaintiff argues that Defendant Hearndon should have let him apply because she knew that his deed had been recorded prior to January 7, 2009, as she was familiar with the facts surrounding the denial of his application in 2008. Pl.'s Resp. [15] at 22. He insists that the Tax Assessor's Office already had the date on which his deed was recorded in its possession because he filed for homestead exemption in 2008. *Id.* at 23. These arguments are irrelevant. Mississippi law required Plaintiff to "furnish" all the information required by the homestead exemption application, and he failed to do so. Mississippi law does not require the Tax Assessor's Office to search

for and supply missing information for persons seeking homestead exemption. No reasonable fact finder could conclude that Defendant Hearndon did not use ordinary care in executing her statutory duties under Mississippi law.

Defendants are also immune from Plaintiff's State law claims pursuant to Mississippi Code Annotated Section 11-46-9(1)(h). Homestead exemption is a privilege. *Meyer Bros. Drug Co. v. Fly,* 63 So. 227, 230 (Miss. 1913); *Cameron v. Lewis,* 59 Miss. 134, 1881 WL 4559, *2 (Miss. 1881). A governmental entity and its employees acting within the course and scope of their employment are immune from claims arising out of the denial or failure to issue any privilege unless such denial or failure to issue is malicious or arbitrary and capricious. MISS. CODE ANN. § 11-46-9(1)(h). As discussed, Defendant Hearndon complied with the State's homestead exemption laws by requiring Plaintiff to provide the recording date of his deed. No reasonable fact finder could conclude that Defendant Hearndon acted maliciously or arbitrarily. In short, Defendants are entitled to dismissal of Plaintiff's State law tort claims.

### 6. State Constitutional Claims

Plaintiff's Complaint [1-2] generally asserts that Defendants violated "State and Federal Constitutions." Pl.'s Compl. [1-2] at p.2. Plaintiff has added nothing more regarding any claimed constitutional violation. Assuming that he has attempted to plead a claim pursuant to the Mississippi Constitution, he has not identified the article or section of the Mississippi Constitution which he believes Defendants have violated. Plaintiff has thus waived any claims for a violation of the

Mississippi Constitution by failing to adequately plead or brief them.  Even where a plaintiff is *pro se,* the Court is not required to "conjure up" and decide issues "never squarely presented."  *Beaudett v. City of Hampton,* 775 F.2d 1274, 1278 (4th Cir. 1985), *cert. denied,* 475 U.S. 1088 (1986).  "District judges are not mind readers."  *Id.* Summary judgment is appropriate on any claims based upon the Mississippi Constitution.

### III.  CONCLUSION

Based upon the foregoing, there is no genuine issue as to any material fact on Plaintiff's federal or State law claims.  Defendants are entitled to summary judgment.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, for the reasons stated more fully herein, the Motion to Strike [22] of Defendants Jackson County, Mississippi, by and through the Jackson County Board of Supervisors, Luther B. Goff, in his official capacity as Tax Assessor of Jackson County, and Greta Hearndon, in her official capacity as an employee of the Jackson County Tax Assessor's Office, is **GRANTED**.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that the Motion for Summary Judgment [8] of Defendants is **GRANTED**.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, Plaintiff's claims against Defendants are dismissed with prejudice.

**SO ORDERED AND ADJUDGED**, this the 27th day of June, 2012.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE